IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELAINE L. CHAO, Secretary | § | |
| of Labor, United States | § | |
| Department of Labor, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. H-04-1115 |
| | § | |
| WILLIAM STUART, Individually, | § | |
| and HTE8 PLAN WELL LIVE SWELL | § | |
| 401(K) PLAN, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION**

Pending before the court[1] is Plaintiff's Motion for Summary
Judgment.  To date, Defendant has not filed a response or
opposition to Plaintiff's motion.  The court has considered the
motion, all relevant filings, and the applicable law.  For the
reasons set forth below, the court **GRANTS** Plaintiff's Motion for
Summary Judgment (Docket Entry No. 11).

I.  **Case Background**

A.  **Procedural History**

In this action filed pursuant to the Employment Retirement
Income Security Act ("ERISA"), Elaine L. Chao, Secretary of Labor
for the United States Department of Labor ("Plaintiff"), seeks

---

[1]     The parties consented to proceed before the undersigned magistrate
judge for all proceedings, including trial and final judgment, pursuant to 28
U.S.C. § 636(c) and Fed. R. Civ. P. 73.  Docket Entry No. 15.

equitable and remedial relief under 29 U.S.C. §§ 1109 and 1132(a)(5).[2]   Claiming violations of 29 U.S.C. §§ 1103(c), 1104(a)(1), 1106(a)(1), and 1106(b), Plaintiff seeks to enjoin Defendant from violating ERISA, to obtain other appropriate relief to redress prior violations, and to enforce the provisions of Title I of ERISA.[3]  Plaintiff filed her complaint with the court on March 24, 2004.[4]

William Stuart ("Defendant") filed his answer to these allegations on July 19, 2004.[5]  On December 29, 2004, Plaintiff filed a motion for summary judgment.[6]  On January 27, 2005, the court granted Plaintiff's Motion for Leave to File Motion for Summary Judgment and gave Defendant twenty days to respond to Plaintiff's summary judgment motion.[7]  Presently, Defendant has not responded to Plaintiff's Motion for Summary Judgment as ordered by the court.

**B.   Factual Background**

Defendant was the Chief Executive Officer ("CEO") of Crescent Services Corporation, doing business as HTE8, (hereinafter referred to collectively as "HTE8") during the relevant time period, January

---

[2]     Plaintiff's Complaint, Docket Entry No. 1.

[3]     <u>Id.</u>

[4]     <u>Id.</u>

[5]     Defendant's Answer, Docket Entry No. 6.

[6]     Plaintiff's Motion for Summary Judgment, Docket Entry No. 11.

[7]     Order dated January 27, 2005, Docket Entry No. 13.

1, 2000, through December 31, 2000.[8]  On January 1, 2000, HTE8 adopted the HTE8 PLAN WELL LIVE SWELL 401(K) PLAN ("Plan").[9]  The Plan was established as an employee benefit program to provide retirement income to employees.[10]  HTE8 established and maintained the Plan,[11] acted as the administrator,[12] exercised discretionary authority and control over the Plan,[13] and had responsibility for the Plan's management.[14]

The Summary Plan Description summarized the definitions of the Plan's terms, employee eligibility requirements, employee participation, Plan funding, administration, distribution of benefits, vesting details, and claim procedures.[15]  The Plan was to be funded by pre-tax employee contributions deducted from the payroll and placed into a trust fund until investment.[16]

On September 11, 2000, HTE8 and Universal Pension, Inc.

---

[8]     Plaintiff's Brief in Support of Her Motion for Summary Judgment, Docket Entry No. 12, Ex. 2, Respondent's Answer to Request for Admission No. 1.

[9]     Id. at Ex. 3, Aff. of K. Watkins, Att. 1, Summary Plan Description.

[10]    Id.

[11]    Defendant's Answer, Docket Entry No. 6 (admitting III(B) of Plaintiff's Complaint).

[12]    Plaintiff's Brief in Support of Her Motion for Summary Judgment, Docket Entry No. 12, Ex. 3, Aff. of K. Watkins, Att. 1, Summary Plan Description.

[13]    Defendant's Answer, Docket Entry No. 6 (admitting III(B) of Plaintiff's Complaint).

[14]    Id.

[15]    Plaintiff's Brief in Support of Her Motion for Summary Judgment, Docket Entry No. 12, Ex. 3, Aff. of K. Watkins, Att. 1, Summary Plan Description.

[16]    Id.

("UPI") entered into a Recordkeeping Service Agreement for UPI to keep the records for the Plan.[17]   On December 29, 2000, UPI terminated its relationship with HTE8 due to, inter alia, HTE8's failure to timely forward contribution deposits to the Plan.[18]

HTE8 made deductions from employee payrolls from September 15, 2000, through November 1, 2000.[19]   These deductions were never remitted to the Plan, but remained in the HTE8 general operating account.[20]   As a result, employee contributions to the Plan became commingled with the corporate funds.[21]   In December 2000, Defendant paid corporate debts from HTE8's general operating account.[22]   Thus, employee contributions were used to fund company operations, not the Plan.[23]  On January 8, 2001, HTE8 filed for bankruptcy.   The employee contributions were never been remitted to the Plan.[24]

The Employee Benefits Security Administration ("EBSA"), the department that investigates ERISA violations, opened an investigation into HTE8 and the Plan following an employee

---

[17]    Id. at Ex. 3, Aff. of K. Watkins, Att. 2, Recordkeeping Service Agreement.

[18]    Id. at Att. 6, Letter from UPI to HTE8.

[19]    Id. at Att. 5, HTE8 Plan Well Live Swell 401(k) Plan Contributions Spreadsheet.

[20]    Id. at Ex. 3, Aff. of K. Watkins.

[21]    See id.

[22]    Id.

[23]    See id.

[24]    Id.

complaint.[25]  Kimberly Watkins ("Watkins") led the investigation.[26]
Watkins used HTE8's Payroll Item QuickReport[27] to create a
spreadsheet showing the total funds contributed by each employee,
the total number of days those funds were delinquent from the Plan
through December 31, 2004 (1521 days), and the estimated total lost
earnings due each employee.[28]  She calculated the lost earnings
using the underpayment rate set by the Internal Revenue Code[29] at
nine percent and concluded that the Plan lost $48,532.62 in
principal and $18,201.73 in interest, for a total of $66,734.35.[30]

## II.   Legal Standard

### A.   Summary Judgment Standard

Summary judgment is warranted only when the evidence reveals
that no genuine dispute exists regarding any material fact and the
moving party is entitled to judgment as a matter of law.  FED. R.
CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);
Brown v. City of Houston, 337 F.3d 539, 540-41 (5th Cir. 2003).  The
movant must inform the court of the basis for the summary judgment
motion and must point to relevant excerpts from pleadings,

---

[25]    Id.

[26]    Id.

[27]    Id. at Att. 4, Payroll Item QuickReport.

[28]    Id. at Att. 5, HTE8 Plan Well Live Swell 401(k) Plan Contributions
Spreadsheet.

[29]    26 U.S.C. § 6621(a)(2).

[30]    Plaintiff's Brief in Support of Her Motion for Summary Judgment,
Docket Entry No. 12, Ex. 3, Aff. of K. Watkins.

depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  The movant must show that she is entitled to summary judgment as a matter of law.  Celotex Corp., 477 U.S. at 323-24.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001).  The nonmoving party must show more than "some metaphysical doubt as to the material facts."  Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995)(citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  In the absence of summary judgment evidence that an actual controversy exists, the court cannot assume that the nonmoving party can or will prove the necessary facts at trial. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

**B.   Standard for Unopposed Motions for Summary Judgment**

Local Rule 7.4 requires the court to treat a failure to respond to a motion as a representation of no opposition.  However, regarding dispositive motions, the court must reach the merits of the case and cannot grant summary judgment based only upon a failure to respond by the nonmovant.  See John v. La. Bd. of Trs. for State Colls. & Univs., 757 F.2d 698, 708 (5th Cir. 1985).

The court must reach the merits even if a failure to oppose

violates local rules. <u>Id.</u> "The movant has the burden of establishing the absence of a genuine issue of material fact and, unless she has done so, the court may not grant the motion, regardless of whether any response was filed." <u>Hetzel v. Bethlehem Steel Corp.</u>, 50 F.3d 360, 362 n.3 (5th Cir. 1995)(quoting <u>Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima</u>, 776 F.2d 1277, 1279 (5th Cir. 1985)). Thus, the court will adjudicate the factual and legal merits of an unopposed motion in order to determine if the motion ought to be granted. <u>See</u> <u>id.</u>

### III.   <u>Liability</u>

Plaintiff established an absence of any genuine issue of material fact by pointing to excerpts from Defendant's answer, Defendant's responses to requests for admissions, and Watkins' sworn testimony. The evidence demonstrates that Defendant received employee payroll deductions intended for the Plan and used them to fund company business operations and pay corporate debts instead of investing them.[31]

Additionally, Defendant admitted that HTE8, an internet service provider, was engaged in commerce or in an industry affecting commerce and that the Plan was an employee benefit plan

---

[31]    <u>See</u> Plaintiff's Brief in Support of Her Motion for Summary Judgment, Docket Entry No. 12, Ex. 3, Aff. of K. Watkins. The court notes that Watkins' affidavit is competent summary judgment evidence. It is based on personal knowledge and provides facts that would be admissible in evidence. Fed. R. Civ. P. 56(e). Watkins' affidavit is based on her personal knowledge as the lead ESBA investigator of the activities in question at HTE8. Moreover, the HTE8 Payroll Item QuickReport that Watkins used to make her conclusions is an exception to the hearsay rule as a "record of regularly conducted activity." Fed. R. Evid. 803(6).

within the meaning of ERISA.[32]  Defendant further admitted that HTE8
was the employer and Plan sponsor.[33]  Moreover, Defendant admitted
that he and HTE8 were fiduciaries and parties in interest to the
Plan.[34]  Accordingly, there is no dispute that the Plan was covered
by ERISA or that Defendant and HTE8 were fiduciaries and parties in
interest to the Plan.

"ERISA assigns to plan fiduciaries 'a number of detailed
duties and responsibilities, which include the proper management,
administration, and investment of [plan] assets,... and the
avoidance of conflicts of interest.'"  Laborers Nat'l Pension Fund
v. N. Trust Quantitative Advisors, Inc., 173 F.3d 313, 317 (5th Cir
1999) (quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 251-52
(1993) (citation omitted)).  To support a claim for breach of
fiduciary duty, a plaintiff must show that the defendant acted in
a way that breached his or her fiduciary duty and a loss to the
plan occurred.  McDonald v. Provident Indem. Life Ins. Co., 60 F.3d
234, 237 (5th Cir. 1995).

Because Defendant admitted he was a fiduciary and the
undisputed facts establish that the Plan suffered losses, the only

---

[32]     Defendant's Answer, Docket Entry No. 6 (admitting III(A) of
Plaintiff's Complaint); see also 29 U.S.C. §§ 1002(3)(defining "employee benefit
plan"); 1003(a)(1)(delineating coverage); 1101(a)(delineating coverage).

[33]     Defendant's Answer, Docket Entry No. 6 (admitting III(B) of
Plaintiff's Complaint); see also 29 U.S.C. §§ 1002(5)(defining "employer");
1002(16)(B)(defining "plan sponsor").

[34]     Defendant's Answer, Docket Entry No. 6 (admitting III(B) and IV(A)
of Plaintiff's Complaint); see also 29 U.S.C. §§ 1002(14)(defining "party in
interest"); 1002(21)(A)(defining "fiduciary").

question is whether Defendant's actions breached his fiduciary duties.

In her motion for summary judgment, Plaintiff argues that Defendant breached his fiduciary duties by misappropriating six weeks' worth of employee pension contributions, thereby violating various provisions of ERISA's subchapter on fiduciary responsibility: 29 U.S.C. §§ 1104(a)(1), 1106(a)(1)(D), 1106(b), and 1103(c)(1).[35]   As described below, the court finds that Defendant's actions violated all but one of these provisions.

## A.   Section 1104(a)(1)

Plaintiff contends that Defendant breached his fiduciary duties in violation of 29 U.S.C. § 1104(a)(1)(A) and 1104(a)(1)(B), the "exclusive purpose" and "like prudence" sections of ERISA. Plaintiff also contends Defendant failed to abide by the terms of the Plan Summary as required in 29 U.S.C. § 1104(a)(1)(D).

ERISA mandates that fiduciaries perform their duties "solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A). Because ERISA fiduciaries can be in both a position to benefit the participants and to benefit themselves at the expense of the participants (e.g., as CEOs of plan employers), the threshold question when alleging breach of ERISA fiduciary duty is whether the fiduciary was acting

---

[35]   See Plaintiff's Brief in Support of Her Motion for Summary Judgment, Docket Entry No. 12.

in his fiduciary capacity when the alleged breach occurred.   See
Pegram v. Herdrich, 530 U.S. 211, 224-26 (2000).

There is no more basic function a fiduciary undertakes than
the vigil over another's assets to ensure they are used for the
intended purpose.   See Cent. States, S.E. & S.W. Area Pension Fund
v. Cent. Transp., Inc., 472 U.S. 559, 571-72 (1985).   The Fifth
Circuit has found that actions similar to those taken by Defendant
breach fiduciary duties.   In Bannistor v. Ullman, 287 F.3d 394,
404-05 (5th Cir. 2002), the court found that the defendants
breached their fiduciary duties by not remitting employee
contributions to the benefit plan for the two months preceding
bankruptcy.   The defendants instead used contributed funds to pay
corporate debts to creditors.   Id.

Similarly, in the instant case, Defendant used the Plan assets
for the benefit of the employer at the expense of the participants.
Therefore, Defendant violated his fiduciary duty under 29 U.S.C. §
1104(a)(1)(A).

ERISA also requires fiduciaries to perform their duties "with
the care, skill, prudence, and diligence under the circumstances
then prevailing that a prudent man acting in a like capacity and
familiar with such matters would use in the conduct of an
enterprise of a like character and with like aims."   29 U.S.C. §
1104(a)(1)(B).   This "prudent man" standard has been further
discussed by the Fifth Circuit:

In determining compliance with ERISA's prudent man

10

standard, courts objectively assess whether the fiduciary, at the time of the transaction, utilized proper methods to investigate, evaluate and structure the investment; acted in a manner as would others familiar with such matters; and exercised independent judgment when making investment decisions. "[ERISA's] test of prudence . . . is one of conduct, and not a test of the result of performance of the investment. The focus of the inquiry is how the fiduciary acted in his selection of the investment, and not whether his investments succeeded or failed." Thus, the appropriate inquiry is "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment."

Laborers Nat'l Pension Fund, 173 F.3d at 317 (citations omitted). The discussion by the Fifth Circuit elucidates that the "prudent man" standard focuses on the fiduciary's duty to select investments with care. Donovan v. Cunningham, 716 F.2d 1455, 1467-68 (5th Cir. 1983).

Defendant's misappropriation of employee contributions for corporate purposes certainly was imprudent. However, legal precedent encompasses only the poor choice of investments, not the failure to invest. Because Defendant did not invest Plan funds, there can be no issue concerning the "prudent man" standard regarding choice of investments. Thus, Defendant did not breach his fiduciary duty under § 1104(a)(1)(B).

ERISA states that fiduciaries are to perform their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(D). The plan documents must be construed in light of ERISA's policies. Hansen

11

v. Cont'l Ins. Co., 940 F.2d 971, 982 (5th Cir. 1991).  Summary plan descriptions are binding and must be followed; any conflicts with terms of the plan are to be governed by the summary plan description.  Id.

The Summary Plan Description states that "[a]ll contributions made to the Plan on [employees'] behalf will be placed in a trust fund established to hold dollars for the benefit of all Participants."[36]  Defendant, quite simply, failed to meet this term in the Plan document.  Defendant commingled employee contributions with the general account rather than place them in a separate trust fund as the Summary Plan Description mandates.  Defendant's failure to abide by the Plan documents therefore constitutes breach of his fiduciary duty in violation of 29 U.S.C. § 1104(a)(1)(D).

## B.   Section 1106(a)(1)(D)

Plaintiff contends Defendant engaged in prohibited transactions by misusing Plan assets in violation of 29 U.S.C. § 1106(a)(1)(D).

ERISA states that a fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such a transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."  29 U.S.C. § 1106(a)(1)(D).  "Plan assets" are defined

---

[36]     Plaintiff's Brief in Support of Her Motion for Summary Judgment, Docket Entry No. 12, Ex. 3, Aff. of K. Watkins, Att. 1, Summary Plan Description, p. 7.

as amounts "that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets." 29 C.F.R. § 2510.3-102(a). Employee contributions become "plan assets" no more than fifteen days after the month of the payroll deduction, regardless of whether the plan actually received the funds. <u>See</u> 29 C.F.R. § 2510.3-102(b)(1); <u>see also</u> <u>U.S. v. Grizzle</u>, 933 F.2d 943, 947 (11th Cir. 1991). Pursuant to these rules, all payroll deductions in question, those from September 15 to November 1, 2000, became "plan assets" no later than December 15, 2000.

Defendant engaged in transactions that constituted direct transfers of Plan assets to parties in interest, namely himself and the company he managed. As fiduciary and party in interest, Defendant knew or should have known that his transfer of assets was to a party in interest. Although it is somewhat unorthodox to apply § 1106(a)(1)(D) to situations in which the fiduciary is also the benefitting party in interest,[37] the court finds no reason that § 1106(a)(1)(D) ought not apply in the present case.[38] Thus, when

---

[37] The language of § 1104(a)(1)(D) suggests a fiduciary violates the statute by allowing transactions from the Plan to a third-party party in interest. Perhaps the more appropriate ERISA sections are those concerning self-dealing and commingling. <u>See</u> 29 U.S.C. §§ 1103(c)(1), 1106(b)(1).

[38] <u>See</u> <u>Iron Workers Local # 272 v. Bowen</u>, 624 F.2d 1255, 1261 (5th Cir. 1980) (finding that fiduciaries can be both ERISA violators and benefactors of violations).

Defendant, acting as a fiduciary, transferred employee contributions to the general account to be used for debt payment, he violated 29 U.S.C. § 1106(a)(1)(D).

## C.   Section 1106(b)

Plaintiff contends Defendant engaged in prohibited transactions by self-dealing and acting with a conflict of interest in violation of 29 U.S.C. § 1106(b)(1) and 1106(b)(2), respectively.

Violating any subsection of 29 U.S.C. § 1106 creates per se liability.  The prohibitions in § 1106 "make illegal per se the types of transactions that experience has shown to entail a high potential for abuse."  Donovan, 716 F.2d at 1464-65.  The transactions listed in § 1106 add to the general duties prescribed in § 1104(a) and categorically bar the listed transactions.  Trust & Savings Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 241 (2000).

ERISA requires that a fiduciary "not deal with the assets of the plan in his own interest."  29 U.S.C. § 1106(b)(1).  This statute clearly prohibits a fiduciary from using or dealing with plan assets for his own benefit.  The plain language interpretation of § 1106(b)(1) is not contradicted by any Fifth Circuit case on point and is supported in other jurisdictions.  See, e.g., Prof'l Helicopter Pilots Ass'n v. Denison, 804 F. Supp. 1447 (M.D. Ala. 1992)(finding a fiduciary defendant in violation of § 1106(b)(1)

for not remitting contributions to the plan); Whitfield v. Tomasso, 682 F. Supp. 1287 (E.D.N.Y. 1988) (holding the defendants in violation of § 1106(b)(1) for paying themselves from plan assets); Pension Benefit Guar. Corp. v. Solmsen, 671 F. Supp. 938 (E.D.N.Y. 1987) (holding president of bankrupt corporation in violation of § 1106(b)(1) for using employee contributions to fund the company and not remitting contributions to the plan); Gilliam v. Edwards, 492 F. Supp. 1255 (D.N.J. 1980) (holding the fiduciary defendant in violation of § 1106(b)(1) for having himself hired as fund administrator when he also served as the trustee of the fund and business manager of union to which fund participants belonged); Marshall v. Kelly, 465 F. Supp. 341 (W.D. Okla 1978) (finding the defendant in violation of § 1106(b)(1) for having a plan pay him $9,000).

As the CEO of HTE8, it was to Defendant's benefit and in his interest to keep the company operating. Thus, when Defendant did not remit the employee contributions to the Plan, but instead used them to continue operation of his doomed company, he dealt with Plan assets in his own interest in violation of § 1106(b)(1).

ERISA mandates that fiduciaries not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interest of its participants." 29 U.S.C. § 1106(b)(2). A fiduciary who acts in a way that adversely affects the plan, for his own benefit, acts with a conflict of interest. See Iron

Workers Local # 272 v. Bowen, 624 F.2d 1255, 1261 n.10 (5th Cir. 1980).

Plaintiff asserts that Defendant's "transaction" was the non-remittance of employee contributions to the Plan.  The court disagrees with this characterization of Defendant's "transaction." The "transaction" was Defendant's payment of corporate debts from an account commingled with unremitted employee contributions, which directly conflicted with the interests of the contributing employees.  Therefore, Defendant violated 29 U.S.C. § 1106(b)(2).

**D.   Section 1103(c)(1)**

Plaintiff contends that Defendant violated the trust provisions of 29 U.S.C. § 1103(c)(1), by inuring Plan assets to his benefit and by commingling employee contributions with company funds.

ERISA requires that "the assets of a plan shall never inure to the benefit of any employer."  29 U.S.C. § 1103(c)(1).  The United States Supreme Court has accepted the interpretation that "'[t]h[e] [anti-inurement] provision refers to the congressional determination that funds contributed by the employer (and, obviously, by the [nonowner] employees . . . ) must never revert to the employer.'"  Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1, 23 (2004) (quoting Vega v. Nat'l Life Ins. Serv. Inc., 188 F.3d 287, 293 n.5) (alterations in original).  The Court went on to say that "[t]he purpose of the anti-inurement

16

provision, in common with ERISA's other fiduciary responsibility provisions, is to apply the law of trusts to discourage abuses such as self-dealing, imprudent investment, and misappropriation of plan assets, by employers and others." Id. Thus, when a fiduciary does not remit plan assets, but instead uses them for his benefit, he violates his duty expressed in ERISA's anti-inurement provision. See id.

ERISA further requires that plan assets "shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries."   29 U.S.C. § 1103(c)(1).  It is the fiduciary's duty to make sure plan assets are kept separate from other business accounts. Bannister, 287 F.3d at 402 n.2.; see also Bird v. Stein, 258 F.2d 168, 177 (5th Cir. 1958).  If a fiduciary breaches this duty and allows plan assets to commingle with other corporate assets, then he will be held liable. Bannistor, 278 F.3d at 402-04.  In Bannister, the Fifth Circuit found the defendants in breach of their fiduciary duties for not remitting employee contributions to the Plan trust when they placed plan assets into the general account to pay creditors.  Id. at 402 n.2.  The court in Bannistor classified the commingling of funds and paying of corporate debts as "a classic, albeit unconventional, case of breach of fiduciary dut[ies]." Id.

In using the employee-contributed Plan assets to pay HTE8's debts, Defendant, as CEO, inured those Plan assets to his benefit. Defendant failed to separate the funds contributed by the employees

17

from other corporate accounts.  Instead, Defendant, like the defendants in Bannistor, used the funds to pay corporate debts. Thus, Defendant violated 29 U.S.C. § 1103(c)(1) by inuring Plan assets to the benefit of HTE8 and by allowing Plan funds and corporate accounts to commingle.

## IV.   Damages

Any fiduciary who breaches his duties shall be personally liable for any losses the plan suffers as a result of the breach. See 29 U.S.C. § 1109(a).  Moreover, a fiduciary breaching any of his duties will be subject to any equitable or remedial relief the court deems appropriate.  See id.

In accordance with 29 U.S.C. § 1109(a), Plaintiff asks the court to order Defendant to reimburse the Plan for its losses and to issue a prospective permanent injunction prohibiting Defendant from serving as an ERISA fiduciary.

## A.   Reimbursement of the Plan

"Any fiduciary who violates § 1104(a)'s duty to act in the best interest of participants and beneficiaries or engages in prohibited transactions listed under 29 U.S.C. § 1106 . . . is subject to liability under 29 U.S.C. § 1109(a)."  Am. Fed'n of Union Local 102 Health & Welfare Fund v. Equitable Life Assurance Soc'y of the U.S., 841 F.2d 658, 662 (5th Cir. 1988).  The liability statute states:

> Any person who is a fiduciary with respect to a plan who
> breaches any of the responsibilities, obligations, or

18

duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a); see also Mertens, 508 U.S. at 252.  Therefore, fiduciaries whose breach of fiduciary duty results in plan losses shall be ordered to reimburse the plan for the losses.

ERISA does not contain guidelines for determining damages for violations of 29 U.S.C. § 1109(a).  See 29 U.S.C. § 1109(a).  The "equitable or remedial relief" provided in 29 U.S.C. § 1109(a) has been interpreted to mean all types of relief available to restore plaintiffs' losses.  The Sommers Drug Stores Co. Empl. Profit Sharing Trust v. Corrigan Enter. Inc. and Walter N. Corrigan, 793 F.2d 1456, 1465 (5th Cir. 1986).  The Restatement (Second) of Trusts provides that a trustee who commits a breach of trust "is chargeable with (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; or (b) any profit made by him through the breach of trust; or (c) any profit which would have accrued to the trust estate if there had been no breach of trust."  Restatement (Second) of Trusts § 205 (1959) (quoted at id.).  Section 205(a) above comports with the recovery provided in 29 U.S.C. § 1109(a) in requiring the breaching fiduciary to "make good to such plan any losses to the plan resulting from each such breach."  The Sommers Drug Stores Co., 793 F.2d at 1464.

19

Therefore, a defendant who has been found in breach of his fiduciary duties must remit the value of the loss or depreciation in value of the trust resulting from the breach.

Plaintiff requests in her motion for summary judgment reimbursement to the Plan in the amount of $66,734.35. This figure is derived from the sum of $48,532.62, the total principal of all employee contributions to the Plan from September 15 to November 1, 2000, and $18,210.73, the total interest accrued by the principal.[39] Plaintiff's Ex. 3, Att. 5 states that the $18,210.73 interest was calculated using an interest rate of nine percent, the "underpayment rate" provided in the Internal Revenue Code ("IRC").[40] See also 26 U.S.C. § 6621(a).

As stated above, Defendant breached his fiduciary duties under 29 U.S.C. §§ 1103, 1104, and 1106. Defendant's actions caused losses to the Plan in the amount of $48,532.62, the total principal employee contributions. The court holds Defendant personally liable for these losses pursuant to 29 U.S.C. § 1109(a). It is therefore ordered that Defendant reimburse the Plan $48,532.62 for the loss incurred as a result of his breaches of fiduciary duties, plus interest, as described below.

In ERISA cases, "[a]bsent statutory mandate, the award of

---

Plaintiff's Brief in Support of Her Motion for Summary Judgment, Docket Entry No. 12, Ex. 3, Aff. of K. Watkins, Att. 5, HTE8 Plan Live Well Plan Swell 401(k) Plan Contribution Sheet.

[40]    Id. at Ex. 3, Aff. of K. Watkins.

prejudgment interest is generally discretionary with the trial court." Whitfield v. Lindeman, 853 F.2d 1298, 1306 (5th Cir. 1988). The Fifth Circuit noted in Whitfield that prejudgment interest may be awarded in consideration of issues of compensation and fairness. "[Prejudgment interest] is not awarded as a penalty, but as compensation for use of funds." Id. Further, "[p]rejudgment interest is not granted 'according to a rigid theory of compensation for money withheld, but is given in response to considerations of fairness.'" Id. (quoting Blau v. Lehman, 386 U.S. 403 (1962)).

In Whitfield, the Fifth Circuit remanded to the district court application of prejudgment interest under 26 U.S.C. § 6621(b) to damages in an ERISA case because the plaintiff did not present an argument for applying the prejudgment rate and the district court did not explain why it accepted the rate as the plaintiff proposed. Whitfield, 853 F.2d at 1307. Further, the Fifth Circuit did not find that the facts in Whitfield supported application of the prejudgment interest rate based on considerations of compensation and fairness.

> There was no proof in the instant case that the Pension Plan was in the business of borrowing or lending money or that it paid or received any specified rate of interest . . . Neither [of the defendants] enjoyed the . . . use of money belonging to the Pension Plan.

Id. at 1306. The Fifth Circuit thus concluded, "[i]f the instant case is appealed to this Court following the remand we now order, we will be greatly assisted in reviewing the district court's discretionary allowance of section 6621 prejudgment interest if it

is accompanied by a brief statement of reasons." Id.

Following the Fifth Circuit's approach in Whitfield, this court finds that because Plaintiff has not presented evidence or argument in support of its application of the nine percent prejudgment interest rate on principal damages, the court does not accept Plaintiff's request for $18,210.73 in interest damages. While the nine percent interest rate suggested by Plaintiff is computed pursuant to statute (see 26 U.S.C. § 6621(b)), the court is not required to apply that rate and may use its discretion in applying prejudgment interest. See Id. at 1306.

Absent Plaintiff's argument to support application of the nine percent prejudgment interest rate, the court considers whether the compensation and fairness factors elucidated in Whitfield support application of the nine percent rate in the instant case. The court finds that these factors are not applicable. Employee contributions to the Plan were made over a three-month period from September through November 2000 and therefore did not accrue over a long period of time. Further, there is no evidence that Defendant lent or borrowed Plan funds or otherwise used them for his own pecuniary gain. Instead, Defendant used Plan funds to pay corporate debts. Prejudgment interest is not awarded to penalize a defendant, but to compensate for use of plan funds. See id. Based on the facts in the instant case, the court finds that application of Plaintiff's suggested nine percent prejudgment interest rate would overly penalize Defendant. The court therefore rejects Plaintiff's motion

22

for interest damages calculated at the nine percent interest rate totaling $18,210.73.

However, in consideration of fairness and compensation to Plan holders, the court finds that application of a prejudgment interest rate more attuned to the market following Defendant's fiduciary breach is appropriate in the instant case.  A survey of yearly average short-term interest rates for a three-month T-bill during the years 2001-2004 indicates annual rates of 3.4 percent, 1.61 percent, 1.01 percent, and 1.37 percent for those years, respectively.[41]  The average of these rates is 1.845 percent.   Had Plan funds been invested pursuant to the terms of the Summary Plan Description, the funds could have accrued according to the average rate of 1.845 percent from 2001 through 2004.  It is therefore ordered that Defendant reimburse the Plan for interest accrued by the $48,532.62 principal in employee Plan contributions, at a rate of 1.845 percent for the 1,521 days the Plan was delinquent.[42]  Accordingly, Defendant's interest liability is $3,731.35.[43]  Defendant is hereby ordered to reimburse the plan for the sum of principal employee contributions and interest in the amount of $52,263.97.

Federal law requires application of a "postjudgment" interest

---

[41]     See http://www.federalreserve.gov/releases/H15/data/a/tbsm3m.txt.

[42]     Id.

[43]     Derived by dividing 1,521 days delinquent by 365 days/year; multiplied by $48,532.62 principal; multiplied by 1.845 percent interest.

rate for monetary judgments in U.S. district courts.  <u>See</u> 28 U.S.C. § 1961(a).  Postjudgment interest is applicable in ERISA cases. <u>Quesinberry v. Line Ins. Co. of North America</u>, 987 F. 2d 1017 (4th Cir. 1993).  The postjudgment interest rate is computed pursuant to 28 U.S.C. § 1961(b).  The total amount of postjudgment interest due is calculated from the date of judgment.  <u>See</u> 28 U.S.C. § 1961(a). The postjudgment rate as of the date of this order is 3.52 percent.[44]  It is therefore ordered that Defendant pay postjudgment interest on the Plan at a rate of 3.52 percent on the $52,263.97 judgment ordered above, to be calculated from the date of this order.

**B.     Prospective Permanent Injunction**

In addition, 29 U.S.C. § 1109(a) states that other equitable relief can be granted as the court deems appropriate.  The Fifth Circuit has agreed with the Second Circuit that, because of the high standard on ERISA fiduciaries, equitable relief can include permanent injunctions against fiduciaries for serious misconduct. <u>Reich v. Lancaster</u>, 55 F.3d 1034, 1054 (5th Cir. 1995).  The district court in <u>Reich</u> stated that the defendant had a demeanor during the two weeks of trial that suggested a desire to make money at any cost, regardless of the economic welfare of the fund.  <u>Reich v. Lancaster</u>, 843 F. Supp. 194, 204 (N.D. Tex. 1993).  Moreover, the defendant participated in covert transactions which systematically

---

[44]     <u>See</u> 28 U.S.C. § 1961(b).

24

drained the fund, resulting in losses in excess of $1.5 million dollars. Id. at 202, 205. The defendant's conduct in Reich warranted a prospective permanent injunction from serving as a fiduciary for an ERISA covered plan.

Defendant's conduct is distinguishable from that of the defendant in Reich, and, as such, Defendant should not suffer the same fate. Defendant did not participate in a "systematic" pilfering of Plan assets. Defendant's indiscretion took place over a four-week period just prior to his company filing for bankruptcy. Defendant's actions resulted in sixty-six thousand dollars in losses, orders of magnitude less that the defendant in Reich. Moreover, nothing about Defendant's demeanor or candor with the court suggests a desire to make money "at all costs." Defendant readily admitted to his role as a fiduciary, party-in-interest, and CEO of the now defunct HTE8.

Plaintiff attempts to demonstrate Defendant's "serious misconduct" by citing numerous ERISA sections which Defendant breached. However, the court realizes that all Defendant's breaches of fiduciary duties derived from one specific indiscretion, that is, the failure to remit employee contributions to the Plan. The court finds permanent injunction against Defendant too hefty a penalty in the present case. Thus, the court refuses to issue a permanent injunction against Defendant from serving as a fiduciary for other ERISA-covered employee benefit plans.

25

## IV.   <u>Conclusion</u>

Based on the foregoing reasons, the court **GRANTS** Plaintiff's Motion for Summary Judgment.

SIGNED in Houston, Texas, this 20th day of July, 2005.

Nancy K. Johnson
United States Magistrate Judge